UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| RICKY ZINN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.: 07-cv-610-JPG |
| | ) | |
| ILLINOIS DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |

### **MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Illinois Department of Revenue's ("IDOR") motion for summary judgment (Doc. 21). Zinn has responded to the motion (Doc. 23), and IDOR has replied to that response (Doc. 26).

**I.      Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II.     Facts

Viewing all evidence and drawing all reasonable inferences in Zinn's favor, the evidence establishes the following facts for the purposes of this motion.[1]

On April 3, 2006, the IDOR hired Zinn, an African-American man, to serve as an "auditor in training," also referred to as a "trainee," in its Fairview Heights, Illinois, office. The trainee position is a one-year entry-level position designed to train those who are not yet qualified to perform the duties of a Revenue Auditor I. The training includes intensive classroom instruction and on-the-job training in IDOR's audits and operations. Successful completion of the trainee program results in promotion to Revenue Auditor I. Unsuccessful

---

[1]Zinn argues in his brief: "It is clear from a complete reading of the depositions, affidavits and other evidence that Plaintiff was forced to tolerate racially charged comments and conduct from his supervisor, Gary Bigham." Pl. Mem. Opp. S. J. at 3. However, it is not the Court's function to "scour the record in search of evidence to defeat a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Thus, the Court considers only evidence cited by Zinn in his brief, not evidence simply contained in "a complete reading" of the record.

trainees are terminated.

Gary Bigham ("Bigham"), who is white, was Zinn's supervisor. Bigham also supervised one other African-American trainee, Madonna Aldridge ("Aldridge"), a woman.

A. <u>Offensive or Harassing Conduct</u>

Bigham made several comments Zinn found offensive. On April 24, 2006, on Zinn's first day at the Fairview Heights office, Bigham told Zinn he should have stayed in Mississippi where he was from, asked him why he did not apply to work in Chicago where some of his family lived and told him he did not see Zinn making it as an auditor on his watch. He also told Zinn he was not allowed to share a ride to training sessions with a co-trainee who was a white female. In August 2006, Bigham repeated his comments about Zinn working in Mississippi or Chicago and about his not succeeding on Bigham's watch, adding that Zinn was not worth the salary he was being paid. In October 2006, Zinn overheard Bigham say he did not see the "retarded boy" making it on his watch. The context of the comment revealed that Bigham was talking about Zinn. At some point, Zinn reported Bigham's offensive statements to Ruby Taylor ("Taylor"), from IDOR equal employment opportunity department, and to another IDOR supervisor.

In addition, throughout Zinn's training period, Bigham was always "on his case" about his work. However, this was because Bigham was ultimately responsible for the accuracy of the audit and wanted to make sure Zinn's work was correct.

Zinn also believed Michael Schaab ("Schaab"), his assigned mentor, contributed to a hostile work environment. One time several months into the trainee program when Zinn came to Schaab with a question, Schaab told Zinn he should look up the answer for himself and called him passive. Indeed, during Zinn's training year, Bigham and Schaab would often refuse to

3

answer Zinn's questions regarding his work, telling him to look up the answer himself. On occasion, when Zinn would ask Bigham a question, Bigham would excuse himself for a few minutes but then not return for hours. In October 2006, Zinn filed an internal discrimination complaint against Schaab and Bigham alleging they were not training or mentoring him properly, but after discussions with Taylor, he elected not to follow up on the complaint.

In addition, five or six times Zinn overheard unknown others in the bathroom at the IDOR office using the word "nigger" but not in reference to him.

B.  Zinn's Work Performance

Bigham was clearly not happy with Zinn's performance from early on and told him so frequently. Some of Zinn's work had to be returned to him multiple times because of mistakes, because things needed to be added or because he did not follow instructions. Bigham thought Zinn's written explanations about the reasons for his audit decisions were too vague and insufficient for the IDOR's central office, although Zinn's explanations were similar to some other employees' explanations. Zinn closed fewer cases than most other trainees and, on at least one occasion, did not complete an audit on time, which resulted in a complaint from the business being audited. However, Bigham also asked Zinn questions he could not answer before he did more investigation and then became dissatisfied when Zinn could not answer the questions. Bigham was also dissatisfied with other aspects of Zinn's work. Zinn agrees that his performance as a trainee was not up to par but attributes it to his not being given proper training and problems with Schaab. Zinn, however, had received the same or more training than others had received.

Zinn's quarterly evaluations reflected Bigham's dissatisfaction. Zinn's first quarterly review, in August 2006, reflected problems with his use of computer functions, oral

4

communication, initiative to learn, assertiveness and timely filing of reports but was otherwise a positive review. Bigham specifically noted that Zinn needed to learn to research on his own, then be more aggressive about asking questions about items he still did not understand rather than waiting for someone to instruct him.

In Zinn's second quarterly review, in October 2006, Bigham noted that Zinn was struggling to understand the IDOR's operations and goals and lacked the judgment to make decisions himself and the initiative to do research and work independently, relying on Zinn or Schaab to make decisions for him. Bigham also noted Zinn's workpapers were in disarray and his communication skills were not good. Again, Bigham indicated Zinn needed to do independent research first, then if he could not find the answers on his own, to ask to his supervisor or mentor. His numeric scores on the second quarterly review were generally lower than in the first quarterly review. Bigham consulted Schaab when completing this interview but never asked him specifically how many times Zinn came to Schaab with questions.

Around October 2006, Bigham assigned Zinn a new mentor, Terry Ahlers, to expose him to a different perspective from another seasoned auditor. Ahlers was Zinn's mentor for only twenty days and did not have an adequate opportunity to evaluate Zinn's abilities. Zinn learned more from Ahlers than Schaab and liked working with Ahlers more than with Schaab.

In the fall of 2006, Bigham informed his supervisor Charles Campbell ("Campbell"), the manager of the Income Tax Division of the IDOR's Audit Bureau, that Zinn was not making sufficient progress as a trainee. Campbell is African-American. Campbell told Bigham to give Zinn additional supervision and instant feedback to improve his chances of succeeding in the trainee program. Bigham responded by giving Zinn more attention than any other trainee since he had become a supervisor in late 2005.

5

In Zinn's third quarterly review, on March 2, 2007, Bigham noted Zinn was still having trouble understanding the IDOR's work and using his judgment and initiative to work independently.  His workpapers were still not neat and he was not completing assigned work correctly and with the explanations required by the IDOR's audit manual.  Bigham noted Zinn was still relying on answers from others rather than doing his own research.  At the same time, Bigham thought Zinn was not asking enough questions or doing enough research and was instead waiting for his supervisor or mentor to point out an issue or problem.  Although the report is confusing about whether Zinn was asking too many questions or not enough questions of his supervisor, the review viewed in its entirety expresses the opinion that Zinn asked too many questions for which he should have been able to find his own answers but not enough questions about more complex issues about which his supervisor or mentor could teach him after he had done the background research.  Bigham concluded that Zinn was not making progress toward becoming a "fully independent auditor."

In his final review in March 2007, Bigham indicated Zinn had not met any objectives except submitting timely reports and needed improvement in all applicable performance areas except relating to his colleagues.  Specifically, Bigham continued to criticize Zinn for failing to ask questions.  Consequently, Bigham did not recommend Zinn be promoted to Revenue Auditor I.

Zinn contacted Campbell in March 2007 and told him about the problems he had been having working under Bigham and Schaab.  Campbell then talked to Bigham and read Zinn's reviews and a March 5, 2007, memo from Bigham setting forth his rationale for not recommending Zinn be promoted.  Despite Bigham's recommendation, Campbell decided to promote Zinn to Revenue Auditor I and see how he progressed through the three-month

6

probationary period. Thereafter, Campbell asked Zinn three times why he needed an extended period of time to respond to his third quarterly review, but Zinn did not answer the question. Campbell then became seriously concerned about Zinn's ability to take direction and follow instructions. In light of Bigham's concerns about Zinn, Zinn's unresponsiveness to Campbell's question caused Campbell to change his mind about whether Zinn had successfully completed the auditor training program and about promoting Zinn to Revenue Auditor I. On March 30, 2007, Campbell told Zinn he would not be promoted. He was instead terminated. Aldridge was promoted to Revenue Auditor I after successfully completing the trainee program.

Zinn filed a charge with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, received a "right to sue" letter and filed this lawsuit on August 27, 2007. He alleges causes of action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5, for a racially hostile working environment and for discriminatory termination. The IDOR asks for summary judgment on both counts.

### III.     Analysis

Title VII prohibits discrimination on the basis of race: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). The race discrimination prohibited by Title VII includes racial harassment that creates a hostile work environment. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004). The Court will address each of Zinn's Title VII theories in turn.

### A. Hostile Work Environment

In Count 1, Zinn claims he was exposed to a hostile work environment because of his race. To establish a prima facie case of race harassment under Title VII, a plaintiff must show that "(1) he was subjected to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment was severe and pervasive enough to alter the conditions of his [employment] and create a hostile and abusive working environment, and (4) there is a basis for employer liability." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005) (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004)); *see Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007) (sexual harassment context) (citing *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)).

Zinn has failed to present evidence that the majority of the alleged harassment he suffered was based on his race. To satisfy the second element, the conduct at issue must have a racial character or purpose. *Luckie*, 389 F.3d at 713. "[A]lleged harassment must be 'sufficiently connected to race' before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race." *Beamon*, 411 F.3d at 863-64 (quoting *Luckie,* 389 F.3d at 713). Simply being African-American and being treated in a certain way is not enough absent some evidence of a connection. *See Beamon*, 411 F.3d at 864. The only conduct about which Zinn complains that could possible have some connection to race is Bigham's use of the term "boy," a derogatory term that has historically been applied to African-American men to recall times of African-American subjugation, and unknown others' use of the word "nigger" overheard by Zinn.

The other instances of harassment are only connected to race by Zinn's speculation, not evidence or any reasonable inference that could be drawn therefrom. Zinn argues that Bigham's

statements on his first day could not have been motivated by a personality conflict because he did not even know Zinn yet, so they could only have been based on race. This is not a reasonable inference to draw from the simple facts that a supervisor expressed his dislike for a new employee and that employee was African-American. *Beamon* makes clear that there is "no inherently racial component to an employer providing an employee with a critical (even an unfairly critical) performance review, providing an employee with insufficient mentoring, or determining that an employee does not yet have what it takes to be elevated to a managerial position." *Beamon*, 411 F.3d at 864. Indeed, even though it appears Bigham did not want Zinn to work at the Fairview Heights IDOR office, to succeed in the training program or to carpool with a co-trainee, nothing connects Bigham's attitude on those matters to Zinn's race. In fact, that he recommended Aldridge, another African-American, be promoted suggests race was not the reason for any hostility to Zinn. Furthermore, Bigham's use of the term "boy" one time is not sufficient to reasonably impute a racial motivation to his other actions. Nor is the use of the word "nigger" by unknown others enough to lend a racist tone to otherwise race-neutral conduct by Bigham or Schaab. Indeed, some of the conduct about which Zinn complains – Bigham's getting "on his case" about performing his work properly or Schaab's instruction to research an answer to a question himself – appears to be related to Zinn's documented poor work performance, not his race.

    The few instances that could be construed to constitute racial harassment were not severe or pervasive enough to have created an actionable hostile work environment. An actionable hostile work environment is created by conduct that has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986);

9

*accord Cooke v. Stefani Mgmt. Servs.*, 250 F.3d 564, 566 (7th Cir. 2001). Harassment that creates a hostile work environment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor*, 477 U.S. at 67) (further internal quotations omitted); *see also Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (*per curiam*); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). "Harassment need not be severe *and* pervasive to impose liability; one or the other will do." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000).

Whether an environment is sufficiently objectively hostile or abusive must be judged by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787-788 (quoting *Harris v. Forklift Systems*, 510 U.S. 17, 23 (1993)) (further internal quotations omitted); *accord Breeden*, 532 U.S. at 270-71; *Boumehdi*, 489 F.3d at 788; *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 888-89 (7th Cir. 2001). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (quotations and citations omitted); *accord Breeden*, 532 U.S. at 271; *Boumehdi*, 489 F.3d at 788. "The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Cooke*, 250 F.3d at 566-67 (citing *Harris*, 510 U.S. at 21-22); *accord Murray*, 252 F.3d at 889.

The conduct connected to race in this case is not so severe or pervasive that it objectively altered the terms or conditions of Zinn's working environment. It amounted to no more than one offensive utterance by Bigham and five to six offensive utterances by unknown persons, none of which were directed at Zinn or were threatening or humiliating. Furthermore, there is no evidence the isolated comments in any way made it more difficult for Zinn to perform his job. These events are simply not enough to have altered the terms or conditions of Zinn's employment.

In sum, there is not enough evidence from which a reasonable jury could conclude that Zinn was subject to an objectively hostile work environment because of his race. The IDOR is entitled to summary judgment on Count 1.

B. Disparate Treatment

In Count 2, Zinn claims the IDOR discriminated against him because of his race by not properly training him, which eventually led to his termination.

To withstand a motion for summary judgment on a disparate treatment claim, a Title VII plaintiff may present direct proof of discrimination through direct or circumstantial evidence. *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001); *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). A plaintiff may also proceed using the burden shifting mechanism outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because Zinn has not offered any direct or circumstantial evidence of discrimination, he must proceed under the *McDonnell Douglas* approach.

Under this approach, a plaintiff must first establish a *prima facie* case of discrimination by presenting evidence that: (1) he is a member of a protected class, (2) he was meeting his employer's legitimate expectations, (3) he suffered an adverse employment action and (4) he

was treated less favorably than others not in the protected class who were similarly situated. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005); ; *see Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007). A plaintiff's successful demonstration of each of these elements creates a rebuttable presumption of discrimination. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).

The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Fane*, 480 F.3d at 538. If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext. *Id.* At the pretext stage, the plaintiff need not provide evidence of the defendant's discriminatory motive so long as he provides evidence from which a reasonable trier of fact could find that the proffered reason was not genuine. *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 699 (7th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146-49 (2000)); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999). It is important to note that the ultimate burden of persuasion remains at all times with the plaintiff. *Reeves*, 430 U.S. at 143 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The IDOR challenges Zinn's ability to establish that he was meeting its legitimate employment expectations and that similarly situated plaintiffs who were not African-American were treated better than he was.

      1.    <u>Prima Facie Case</u>

The evidence is clear that Zinn was not meeting the IDOR's expectations. The relevant question then is whether those expectations were legitimate in light of the training he was given.

12

Zinn claims he was not trained sufficiently to be able to do his job and that Bigham and Schaab did not answer his work-related questions. On the other side, Bigham claims Zinn was given the same training as other employees who were promoted to Revenue Auditor I plus additional attention and feedback beginning in the fall of 2006 pursuant to Campbell's direction. Nevertheless, Zinn continued to come to Bigham and Schaab for answers that, in Bigham's opinion, he should have been able to look up himself, but not to ask questions about more complex problems about which a trainee should need experienced guidance. The fact that others who received the same training Zinn did were able to complete the trainee program successfully and advance to Revenue Auditor I shows that such expectations were not unreasonable in light of the training given. Thus, the IDOR's expectations were legitimate, and Zinn did not satisfy them.

Zinn has also failed to point to a similarly situated non-African-Americans who were treated better than he was. To be similarly situated, an employee must be "directly comparable . . . in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002); *accord Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007). Those "material respects" depend on the specific situation involved in the case and may include whether the employees dealt with the same supervisor, were subject to the same standards, or had comparable experience, education and qualifications, if the employer took these factors into account when making the personnel decision in question. *Patterson*, 281 F.3d at 680. While the plaintiff need not point to a virtual twin, he must point to someone who is similar enough in a common sense analysis "to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, [so as to] isolate the critical independent variable," in this case, race. *Filar v. Board of Educ.*, 526 F.3d 1054, 1061 (7th Cir. 2008) (quoting

13

*Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (brackets in original), *aff'd*, 128 S. Ct. 1951 (2008)).

Zinn seems to be laboring under a misconception about who would be a similarly situated person. He appears to believe the appropriate comparable would be other African-American males. Pl. Mem. Opp. S. J. at 7. In fact, the proper comparison would be with non-African-Americans who are similar to him in other respects. However, there is no evidence that any non-African-American was trained more thoroughly by the IDOR, Bigham or Schaab than Zinn was or that any non-African-American trainee with a performance record similar to Zinn's was promoted to Revenue Auditor I.[2]

Because Zinn cannot show he was qualified to be a Revenue Auditor I or that any other non-African-American was treated better than he was, he cannot establish a prima facie case of discrimination, and the IDOR is entitled to summary judgment.

2. Legitimate Non-Discriminatory Reason and Pretext

Even if Zinn had been able to establish a prima facie case of race discrimination, there is no evidence that the IDOR's reason for terminating him was a pretext for some other, undisclosed reason. First, the IDOR claims it terminated Zinn because, after receiving the same or more training than other trainees, he was on the cusp of satisfying Campbell that he deserved a promotion to Revenue Auditor I, but then spoiled his chance of promotion by being unresponsive to Campbell's repeated requests for certain information. This is a legitimate reason for termination that had nothing to do with discrimination.

---

[2]Zinn suggests Aldridge is an appropriate comparable outside his protected group because she is not an African-American male. However, in his pleading Zinn complains of discrimination on the basis of his race, not his gender combined with his race under a "sex plus race" theory. *See Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 638 n. 2 (7th Cir. 2001). Thus, Aldridge is not an appropriate comparable.

14

There is simply no evidence from which a reasonable jury could conclude that the IDOR's proffered reason for terminating Zinn was not genuine. At the pretext stage, the question is not whether the employer's proffered reason is correct or wise but whether it is the true and genuine reason for the employer's action rather than a pretext for a decision based on some other, undisclosed reason. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). If it is the true reason for the employer's decision, the employer is entitled to summary judgment. *Id.* If not, whether the true reason is discrimination must be decided by a jury. *Id.* (citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 147-48 (2000)).

Zinn admits he had performance problems. The uncontested evidence shows that this, in combination with Zinn's unresponsiveness to Campbell's questions about why he needed so long to respond to his review, caused Campbell to decide he would not make a successful Revenue Auditor I. While this may or may not have been a wise decision, there is no evidence this was not the *real* reason for Zinn's termination. Zinn cannot establish that the IDOR's reason for terminating him was a pretext for some other undisclosed reason.

In sum, no reasonable jury could find Zinn was provided less training than other employees or was terminated because of his race. Accordingly, the IDOR is entitled to summary judgment on Count 2.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the IDOR's motion for summary judgment (Doc. 21) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: October 14, 2008**

                                       s/ J. Phil Gilbert
                                       **J. PHIL GILBERT**
                                       **DISTRICT JUDGE**